

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JOHN O. MILLER,<br><br>Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD,<br><br>Respondent. | Cause No. CV 17-26-BLG-SPW-TJC<br><br><br>FINDINGS AND<br>RECOMMENDATIONS OF UNITED<br>STATES MAGISTRATE JUDGE |

On March 3, 2017, Petitioner John O. Miller (Miller) filed this action under 28 U.S.C. § 2254.  Miller was convicted of two counts of deliberate homicide in the Twenty-Second Judicial District Court, Stillwater County, and is currently serving two concurrent life sentences.  Miller is a state prisoner proceeding pro se.

Following an initial review of Miller's petition, the Court ordered the State to file documents from the state court record.  (Doc. 6).  The State timely complied.  (Docs. 8-1 through 8-62).  For reasons discussed below, it is recommended that Miller's petition be denied, because it does not survive deferential review under the Antiterrorism and Effective Death Penalty Act of 1996.

## I.     Procedural History

In the early morning hours of September 14, 1990, a resident of Columbus, Montana observed a burning vehicle on a country road approximately four miles

outside of town.  The Sheriff and the Columbus Volunteer Fire Department responded.  Once the fire was extinguished, two bodies were discovered inside the vehicle burned beyond recognition.  Forensic testing ultimately identified the men as Kirk William Aberle and Garrison Shupe.  It was also determined that both victims had been shot prior to the car being set on fire.  Miller was ultimately charged with two counts of deliberate homicide for the deaths of Aberle and Shupe.  *See* (Docs. 8-3 and 8-4).

### i.    Trial court proceedings

Throughout the trial court proceedings, Miller was represented by retained counsel, James H. Goetz (Goetz).  On August 2, 1991, Miller entered into a plea agreement and agreed to plead guilty to the homicide of Shupe and to enter an *Alford* plea[1] to the homicide of Aberle.  (Doc. 8-12 at 8-19).  Miller signed an Acknowledgment of Waiver of Rights by Plea of Guilty, wherein he acknowledged the State had agreed to recommend two concurrent life sentences and to withdraw its Notice of Intention to Seek Death Penalty.  (Docs. 8-9; 8-11).  During the change of plea hearing, the trial court advised Miller that it was not bound by the parties' plea agreement.  (Doc. 8-12 at 8).

A sentencing hearing was held on November 8, 1991.  Pursuant to the plea

---

[1] An *Alford* plea is a plea of guilty in which the defendant maintains his innocence.  *North Carolina v. Alford*, 400 U.S. 25, 36 (1969).

agreement, the State made its recommendation of two concurrent life sentences, and advised the trial court it had agreed to waive the death penalty. (Doc. 8-15 at 8). Defense counsel concurred in the State's recommendation, and acknowledged that the agreement between the parties was not binding upon the trial court. *Id.* at 9. Neither party made a direct recommendation to the court as to parole restrictions. But defense counsel indirectly asked the court to allow Miller to be parole eligible, imploring the court not to "snuff out that last ember of hope" when discussing the length of the sentence to be imposed. *Id.* at 12.

In imposing sentence, the trial court noted that even though Miller would be serving a life sentence, he could be parole eligible in seventeen years with the allowance for good time credit.[2] *Id.* at 14. Due to the trial court's assessment of Miller's dangerousness, however, the court restricted his parole eligibility for a period of 24 years. *Id.* The court found the restriction was necessary for the protection of society. *Id.* The court also ordered that prior to a grant of parole or supervised release, Miller would need to undergo an updated psychological evaluation to determine whether he could safely be released into the community. *Id.* at 14-15.

---

[2] Under Mont. Code Ann. § 53-30-105, which was in effect at the time Miller committed the offenses, he was eligible for day-for-day good time credit, contingent upon his behavior in prison. The statute was repealed in 1997. *See e.g. Steilman v. Michael*, 2017 MT 310, ¶ 22, 389 Mont. 512, 407 P. 3d 313 (discussing the application of good time credit).

The court noted that it was giving Miller a slight "light" or "ember" at the end of the tunnel, as urged by defense counsel, in allowing for the possibility of parole after 24 years. *Id*. at 17.[3] Judgment was entered on November 13, 1991. (Doc. 8-16). Miller did not file a direct appeal.

### ii.    Initial postconviction proceedings

In January 1995, Miller, represented by attorney Edmund Sheehy, filed his first petition for postconviction relief in Montana State District Court. (Doc. 8-17). Among other claims, he argued the trial court erred by not instructing him, pursuant to statute, of the maximum penalty provided by law, including any special parole restrictions. *Id*. at 2. Miller claimed he was unaware at the time of his change of plea hearing that he was not eligible for parole until he served 30 years, less any good time, under MCA §46-23-201(4). *Id*.

Goetz filed an Affidavit in response to Miller's petition for postconviction relief. (Doc. 8-25). Goetz refuted Miller's claim that he was never advised that he could not be paroled with a life sentence until he had served 30 years, less good time. Goetz attached a letter he had sent to Miller that addressed the relevant statute, MCA § 46-23-201(3). Along with this letter, Goetz also provided Miller with a copy of the statute discussing "good time allowance," MCA § 53-30-105.

---

[3] The Presentence Investigation Report recommended Miller's parole eligibility be restricted for a period of 40 years. (Doc. 9 at 9).

(Doc. 8-25 at 2, ¶ 3). Goetz explained he and Miller had extensive discussions regarding the calculation of good time credit and "what that translated to in terms of actual time served." *Id.* Goetz further stated that he made it clear to Miller that the trial court was not obligated to accept the plea agreement reached by the parties, and that the parties' recommendation was merely a factor for the court to consider. These representations were supported by three separate letters Goetz wrote to Miller during the course of his representation. *Id.* at 3, ¶¶ 4-5.

Miller then filed an Amended Petition and Brief in Support. In his amended petition, Miller abandoned his original claims relative to parole restrictions. *See* (Docs. 8-26 & 8-27). Instead, Miller alleged he had been denied effective assistance of counsel because he was not advised of his right to appeal his sentence. He also alleged the trial court failed to inform him of the specific statutory provisions that governed the sentencing hearing, and failed to advise him that he should consider the most severe punishment allowable under the law as required by Mont. Code Ann. 46-12-204(3)(b) (1989). *See generally*, (Doc. 8-26).

The state court rejected Miller's claim of ineffective assistance based on the alleged failure to inform him of his appellate rights for several reasons. First, it held that because the issue of ineffective assistance could have been raised on direct appeal, it was procedurally barred from consideration in postconviction. (Doc. 8-30 at 2-3). The court next cited the transcript of the sentencing hearing

wherein the trial court and Miller discussed the rights he was giving up by pleading guilty, including the right to appeal. *Id.* at 3. Finally, the court took judicial notice of a civil matter in which Miller had sued his father and step-mother, wherein one of the claims was that Miller's father refused to pay for Miller's "legal fees to appeal his conviction." *Id.* at 3-4. The court determined Miller voluntarily and intelligently waived his right to appeal, and that his ineffective assistance of counsel claim was procedurally barred. *Id.* at 4.

Additionally, the state court held Miller could not make a showing of prejudice under *Strickland v. Washington* (1984), 466 U.S. 668, 104 S. Ct. 2052. *Id.* at 4-5. In this regard, the state court found Miller had made no showing that he would have succeeded on appeal. *Id.* at 5.

As to Miller's second claim, the state court noted the trial court never specifically informed Miller of the specific statutory provisions governing the plea proceeding, or that he should consider the most severe punishment allowed by law. *Id.* at 5. Nevertheless, Miller was advised of the maximum possible penalty provided by law by informing Miller that consecutive terms of life imprisonment could be imposed. *Id.* at 6. Therefore, although the trial court did not use the exact language from the statute, it did appropriately inform Miller of the maximum possible sentence. *Id.* Accordingly, the state court found Miller was properly advised of his potential punishment. *Id.* The court also held that Miller was not

6

prejudiced by the trial court's failure to advise him of the statutory title and chapter which governed sentencing, finding that information, standing alone, would have been of no aid or benefit to Miller. *Id.* at 6-7. Therefore, Miller's petition was denied.

### iii.    Postconviction Appeal

Miller, represented by counsel, appealed the denial of this postconviction petition arguing: (1) his guilty plea was invalid because the trial court did not strictly comply with a Montana plea statute, MCA §46-12-204(3)(b); (2) the trial court's failure to strictly comply with the statute gave Miller a right to appeal; (3) Goetz provided ineffective assistance by not advising Miller of his right to appeal. *State v. Miller,* 924 P. 2d 690 (1996).

As to the first claim, the Montana Supreme Court found that Miller was not prejudiced by failing to strictly adhere to the Montana plea statute. The statute in effect at the time of Miller's guilty plea provided, in relevant part, that:

> (b) Before a judge accepts a plea of guilty, he must advised the defendant:
>
> (iii)  that prior to entering a plea of guilty, the defendant and his counsel should have carefully reviewed Title 46, chapter 18, and considered the most severe sentence that can be imposed for a particular crime.

Mont. Code Ann. § 46-12-204(3)(b) (1989)

The Supreme Court found that while the trial court did not use the statutory language of "most severe sentence," Miller was adequately informed of the

maximum penalty provided by law. *Id.* at 692.  Thus, the trial court did not

deprive Miller of any essential information to which he was entitled, and this

"purely semantic difference" did not amount to prejudicial error. *Id.*  The Court

also agreed with the state district court that the failure to specifically mention Title

46, chapter 18 in the plea colloquy did not prejudice Miller. *Id.*

With respect to the ineffective assistance of counsel claim, the Montana

Supreme Court held that Miller could not establish either prong of the test set forth

in *Strickland*.  The Supreme Court stated that counsel is only required to advise of

the right to appeal after a guilty plea if the defendant inquires about appeal rights,

or if there are circumstances that indicate that the defendant may benefit from

receiving such advice. *Id.* at 691.  The Court found no such circumstances existed

in Miller's case.

Further, because Miller could not have successfully appealed his sentence

based on the purported failure to recite the statutory language verbatim, counsel

was not ineffective for failing to advise Miller of his right to appeal. *Id.* at 692.  In

short, Miller was not prejudiced by the actions of the trial court or defense counsel.

### iv.    Second postconviction proceedings

In 2002, Miller, through an "anonymous, confidential next friend" filed a

second postconviction petition in Montana State District Court, alleging his

convictions were constitutionally infirm because he suffered from severe antisocial

personality disorder during the commission of the offense.  Miller argued this mental defect prevented him from (1) forming the requisite mental state during the commission of the crime; (2) entering an intelligent and voluntary plea; and (3) filing the petition at an earlier date.  *See generally* (Docs. 8-35 & 8-36).

In denying his second petition, the state court found Miller's petition to be untimely, and that Miller could not establish a legitimate basis to excuse his untimeliness.  (Doc. 8-38 at 6-8).  The court also held Miller's petition to be barred as an unauthorized successive petition, and that the claims Miller advanced could have been raised in his prior petition.  *Id.* at 8-10.

In an unpublished memorandum opinion, the Montana Supreme Court affirmed the denial of Miller's second petition.  *State v. Miller*, 2003 MT 311N (Mont. Nov. 13, 2003).

### v.    Miller's appearance before the parole board

Miller made his first appearance before the Montana Board of Pardons and Parole in November of 2015; his request to be released on parole was denied.  The Honorable Blair Jones, a current Montana State District Judge who was the prosecuting attorney on Miller's underlying criminal case, provided a letter to the Parole Board opposing Miller's release.  *See* (Doc. 8-55 at 20-23).[4]  Miller claims

---

[4] Nancy Rhode, the current Stillwater County Attorney, also submitted a letter in opposition to Miller's release.

this act was "exactly the opposite to [Jones's] original position as negotiated in 1991." (Doc. 2 at 5).

### vi.   Motion to withdraw plea

Following the denial of parole, Miller filed a motion to withdraw his guilty plea in Montana State District Court. (Doc. 8-54). Generally, Miller argued that his pleas were involuntary because they were induced by misrepresentations as to his parole eligibility. Miller contended: (1) the State "constructively misrepresented the value of its commitment to [his] release" in the plea agreement, and therefore his plea entered pursuant to the plea agreement was not intelligently and knowingly entered; (Doc. 8-55 at 2-5); (2) the trial court unlawfully participated in the plea agreement process, and did not strictly follow the statutory language in accepting his plea (*id*. at 5- 7); (3) the trial court failed to follow the statutory language governing pleas and sentencing in violation of Miller's due process rights (*id*. at 7-9); and (4) Goetz provided ineffective assistance by having ex-parte communications with the trial court, misrepresenting the trial court's commitment to follow the plea agreement, and failing to properly advise Miller of his right to proceed to trial (*id*. at 9-12).

The state court addressed the merits of each of Miller's claims and ultimately denied Miller's motion to withdraw. *See generally* (Doc. 8-58). As to the claim that the State misrepresented its commitment to his release on parole, the

10

court found no evidence to support the contention that the State made any commitment on the issue.  The court found the letters from Goetz that Miller provided in support of his argument did not contain any statements relative to parole restrictions.  *Id.* at 3.  The court further observed that even if the letters could be so interpreted, Miller received them after he had accepted the plea agreement, and therefore could not demonstrate that he relied upon them in deciding to enter his guilty plea.  *Id.*  Further, nothing in the letters, the transcripts of the change of plea and sentencing hearings, Goetz's affidavit, or the plea agreement itself could reasonably be interpreted as an agreement by the State that it would not oppose Miller's release on parole, or constituted an agreement Miller would be granted parole.  *Id.*

Additionally, the state court found Miller was advised of the charges against him and the maximum penalty provided by law; all of which Miller indicated he understood.  The trial court also advised Miller of the constitutional rights he would be waiving by accepting the plea agreement, and that the trial court was not bound by the agreement.  Again, Miller indicated he understood all of his rights, and that the Court was not a party to or bound by the plea agreement.  *Id.*  Miller advised the court he was satisfied with the services of his attorney and was not suffering from an emotional or mental disability.  *Id.*  Accordingly, the court found Miller was aware of the direct consequences of his plea, and the plea was not

11

induced by threats or misrepresentations. *Id.* at 5-6.

The state court therefore rejected Miller's argument that his plea was not voluntarily, knowingly, or intelligently entered. It found Miller pled guilty in exchange for the State's recommendation of two concurrent life sentences and to withdraw its intent to seek the death penalty, and concluded the "State fulfilled its promise to Miller." *Id* at 5.

With regard to Miller's second claim, the state court found no evidence to support Miller's contention that the trial court unlawfully participated in the plea agreement process. The court found that letters from Goetz indicated he was attempting to gauge the likelihood the judge would accept the plea. *Id.* at 8. But the letters did not appear to solicit the trial court's assistance in formulating a plea agreement. *Id.*

Regarding Miller's argument that the trial court failed to strictly adhere to statutory provisions during the change of plea and/or sentencing hearing, the court agreed that the trial judge did not make all of the requisite advisories. Specifically, the court found that the trial court did not advise Miller that a judge may not participate in making a plea agreement, and that Miller did not have the right to withdraw his plea if the Court did not accept the State's recommendation under the plea agreement. *Id.* at 8. Nevertheless, the court found that Miller failed to show that these failures constituted good cause to allow him to withdraw his pleas

12

twenty-five years after they were made. *Id*. at 7-8.

The state court also determined Miller was not deprived of his right to due process under the federal or state constitutions by the trial court's failure to strictly follow the statutory language governing guilty pleas. *Id*. at 8-10. The court determined that the statute was procedural in nature, and did not give rise to a protected liberty interest.

Finally, as to Miller's ineffective assistance claim, the state court determined Miller's counsel performed effectively. The court found Miller failed to establish that Goetz involved the trial judge in formulating the terms of the plea agreement or elicited the trial court's assistance. *Id*. at 8. It found Miller failed to produce any evidence that demonstrated ex-parte communication with the trial court. At most, counsel indicated that he was attempting to set up a conference call with the prosecuting attorney and the judge. Thus, if any such communication did occur, it was not ex-parte. *Id*. at 11.

As discussed above, there was also no evidence to support the contention that the State made any commitment regarding Miller's release on parole. In addition, because the trial court did not reject the plea agreement, it was immaterial whether Miller was advised he could withdraw his plea if the court rejected it. *Id*.

The court further determined that Miller's parole eligibility was lawfully restricted. Therefore, Goetz was under no obligation to object to the restriction at

sentencing because there was no basis for objection. *Id.*

As to Miller's argument that Goetz failed to inform him of his right to proceed to trial, the court referenced the plea agreement wherein Miller acknowledged that by accepting the agreement he waived his right to trial. *Id.* at 12. In short, the court found Goetz performed reasonably.

### v.   Appeal from Denial of Motion to Withdraw Plea

Miller appealed the denial of his motion to withdraw his plea. In a nonpublished memorandum opinion, the Montana Supreme Court summarily denied Miller relief, holding the district court's findings of facts were not clearly erroneous, and that the law was applied correctly. *See State v. Miller*, 2017 MT 4N (Mont. Jan. 10, 2017).

### II.   Miller's Claims

In the present petition, Miller alleges: (1) he did not enter an intelligent or voluntary plea due to numerous misrepresentations by Goetz regarding the trial court and state's commitment to the plea terms,  (Doc. 2 at 9-11); (2) he was denied effective assistance due to numerous misrepresentations by Goetz regarding the trial court and state's commitment to the plea terms, and because Goetz did not object when the trial court rejected the alleged parole terms (Doc. 2 at 11-13); and (3) the trial court's failure to follow the state procedural statutory plea procedure violated Miller's right to substantive due process. *Id.* at 13-14.

Miller contends the state court's findings that his plea was entered knowingly and intelligently, and that he was provided effective representation, were contrary to clearly established law. He further argues that the state court's decision to deny his motion to withdraw was based on an unreasonable determination of the facts in light of the objective evidence presented in the state court proceedings. *Id.* at 9.

## III.   Analysis

Although there may be procedural hurdles to Miller's claims – particularly statutory time-bars – the federal limitations period does not pose a jurisdictional bar to proceeding to the merits of Miller's claims. *Lambrix v. Singletary*, 520 U.S. 518, 522-25 (1997); *Lee v. Lampert*, 653 F. 3d 929, 933 (9th Cir. 2011)(en banc). As discussed below, because Miller cannot overcome the deference this Court is to give to the state courts' decisions, his petition should be denied.

### i.   Deferential Standard under 28 U.S.C. §2254(d)

Since Miller's petition was filed after 1996, it is subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA substantially limits the power of federal courts to grant habeas relief to state prisoners. *Hurles v. Ryan*, 725 F. 3d 768, 777 (9th Cir. 2014). The Supreme Court has made clear that AEDPA imposes a "highly deferential" standard of review that "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537

U.S. 19, 24 (2002)(per curiam)(internal citation omitted).

Under AEDPA, a federal court may not grant a prisoner's petition on a claim that was decided on the merits in state court, unless the state court's adjudication of the claim:

1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

"'[C]learly established Federal law'... is the governing legal principle or principles set forth by the Supreme Court [in its holdings] at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-71 (2003). "An unreasonable application of the holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).

A state court's decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor,* 529 U.S. 362,

16

405-06 (2000).  A state court's factual findings are unreasonable if "reasonable minds reviewing the record" could not agree with them.  *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015)(citations omitted).  "For relief to be granted, a state court merits ruling must be so lacking in justification that there was an error…beyond any possibility for fair-minded disagreement." *Bemore v. Chappell*, 788 F. 3d 1151, 1160 (9th Cir. 2015).

The relevant decision for purposes of federal habeas review is the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804-06 (1991); *see also Medley v. Runnels*, 506 F. 3d 857, 862 (9th Cir. 2007)(en banc).  "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst*, 501 U.S. at 803.  In cases of summary denial by a state's highest court, a federal habeas court "looks through" to the last reasoned state court decision to address the claim at issue. *Id.* at 804-06.

In the instant matter, the Montana Supreme Court summarily denied Miller's appeal of the denial of his motion to withdraw his guilty plea.  Therefore, the Court "looks through" to the lower court's reasoned decision denying Miller's motion to withdraw his pleas. *Medley*, 506 F. 3d at 862.

### 1.  Claim 1- Voluntariness of Plea

The test for determining whether a plea is valid is "whether the plea

represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (quoting *Alford*, 400 U.S. at 31)(quotation marks omitted); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). "[T]he record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Brady v. United States*, 392 U.S. 742, 747 n. 4 (1970). Of particular importance is that the defendant enter a guilty plea with "sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. Thus, when a defendant is "fully aware of the direct consequences" of a guilty plea, it must stand unless it was induced by threats, misrepresentation, or other improper coercion. *Id.* at 755; *see also Little v. Crawford*, 449 F. 3d 1075, 1080 (9th Cir. 2006). A plea is coerced when the defendant was induced by promises or threats that would render the plea inherently involuntary. *Iaea v. Sunn*, 800 F. 2d 861, 866 (9th Cir. 1986).

Relying upon *Brady,* Miller contends his plea was involuntary because he was unaware of the actual value of any commitments made to him by the trial court, the prosecutor, or his own attorney. (Doc. 2 at 9). He states that his "'[s]subjective' understanding of the agreement terms was [s]ubstantially influenced by [m]isrepresentations from [his] attorney (Goetz)." (Doc. 2 at 11.)

To support these contentions, Miller points to Goetz's affidavit wherein he stated he had engaged in extensive discussions with the prosecution and Miller

18

concerning calculations of credit for good time.  (*See* Doc. 8-25 at 2.)  Miller

alleges he understood this statement to mean he would only serve 17 years with

good time credit, and that the State was in agreement with this parole term.

According to Miller, Goetz also led him to believe he had contacted the trial court

to confirm the judge would impose the negotiated parole term and not be swayed

by Miller's criminal history.  *Id*. at 10.  Goetz allegedly reaffirmed this in a letter

dated October 23, 1991, wherein he advised Miller he forged a "virtual agreement"

with the judge to adopt the negotiated parole term.  *Id*. at 10-11.

But the documents contained in the record, and relied upon by the state court

in denying Miller's motion to withdraw his plea, belie Miller's argument.  First and

foremost, the State made no agreement with Miller relative to parole.  Under the

terms of the plea agreement the State agreed to waive imposition of the death

penalty and to recommend concurrent life sentences.  *See e.g.* (Doc. 9 at 3).

Prior to his entry of plea, Miller acknowledged this agreement in an

Acknowledgment of Waiver of Rights form.  (Doc. 8-9.)  Miller indicated on the

form that the state agreed to recommend two concurrent life sentences.  *Id*. at ¶5.

There was no indication that any agreement/proposal had been made to him

relative to parole eligibility.  (Doc. 8-9).

Miller also acknowledged on the form his understanding that the parties'

recommendation was not binding upon the Court.  *Id*.  Miller again acknowledged

this same understanding during his change of plea hearing. *See* (Doc. 8-12 at 7-8). During that hearing, Miller was advised that the trial court would consider the sentencing recommendation made by the parties, but the court was "not bound to make a sentence that would be in accordance with the plea bargain, but . . . could impose any other sentence that would be appropriate under the law within the maximums provided by law for this kind of an offense without regard to the plea bargain." *Id.* at 8:8-13.

Goetz also made it clear to Miller that the trial court was not obligated to accept the plea agreement, and this understanding was stated or implied in three separate letters.[5] Goetz informed Miller that sentencing recommendations were merely factors that the trial court was free to consider or reject, and provided him a copy of a Montana Supreme Court case reiterating that principle. *Id.* at 3, ¶5.

At sentencing, the State recommended the terms it previously had agreed to; two concurrent life sentences. (Doc. 8-15 at 8: 3-15). The state made no recommendation regarding parole restriction or eligibility. Goetz reiterated the parties' agreement of concurrent life sentences and urged the court to accept it. *Id.* at 9:5-11. The court adopted the parties' recommendation, but also advised that it was going to place certain restrictions and conditions upon Miller's sentence, as

---

[5] These three letters were dated: August 5, 1991, September 10, 1991, and November 4, 1991. (Doc. 8-25 at 3).

authorized by statute. *Id.* at 14.

Therefore, the record does not show that the plea agreement contained any agreement relative to parole eligibility, and the documents contained in the record and those supplied by Miller also give no indication that he was provided with any such assurance.  To the contrary, Miller appears to have been advised of the recommendation the state would make, which it did and which the trial court followed.  Additionally, Miller was repeatedly advised by counsel and by the trial court itself that any agreement reached by the parties was not binding upon the court.  There were simply no commitments relative to parole eligibility.  Moreover, the documents Miller relies upon do not suggest that he was otherwise misled by the trial court, the State, or Goetz.

The fact that Miller may have struggled with his decision to plead guilty and now appears to regret the decision, does not make the decision a coerced one.  *See Johnson v. United States*, 539 F. 2d 1241, 1243 (9th Cir. 1976).  This Court has considered "all of the relevant circumstances surrounding" the entry of Miller's plea.  *See Brady v. U.S.*, 397 U.S. 742, 749 (1970).  The state court's determination that Miller voluntarily, knowingly, and intelligently pled guilty, and that he failed to present objective evidence to support his belief that the State would not oppose his initial parole request was a reasonable one.  The decision should be accorded deference under AEDPA.

## 2. Claim 2- Ineffective Assistance of Counsel

The clearly established federal law governing claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Sixth Amendment's right to counsel guarantees not only assistance, but effective assistance, of counsel. *Strickland*, 466 U.S. at 686. To prevail on an ineffective assistance of counsel claim, a defendant must establish (1) that his counsel's performance was constitutionally deficient, and (2) that "the deficient performance prejudiced the defense." *Id.* at 687. A court evaluating an ineffective assistance of counsel claim does not need to address both elements of the test if a petitioner cannot prove one of them. *Id.* at 697.

To demonstrate deficient performance, a petition must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Only if counsel's acts or omissions, examined in light of all the surrounding circumstances, fell outside this "wide range" of professionally competent assistance will petitioner prove deficient performance. *Id.* at 690.

In addition, proof of deficient performance does not require habeas corpus relief if the error did not result in prejudice. A petitioner must show that, but for counsel's unprofessional errors, the result of the proceedings would have been

different. *Id.* at 694. Thus, a petitioner can only prevail if he can show that counsel's errors resulted in a "proceeding [that] was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). A "doubly" deferential judicial review is appropriate when analyzing ineffective assistance of counsel claims under §2254. *See Cullen v. Pinholster*, 563 U.S. 170, 2020 (2011). The "question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

This claim and its analysis dovetails with Miller's first claim. Miller argues Goetz performed deficiently when he (1) misrepresented the actual value of the state and judge's commitment to the plea terms relative to parole, (2) made no objection when the judge "rejected" the agreed parole terms and refused any opportunity for Miller to withdraw his plea, and (3) made no objection when the judge failed to properly instruct Miller pursuant to the state criminal procedure statute. (Doc. 2 at 12). The Court finds that none of these claims have merit. Miller has not demonstrated that counsel's performance fell outside the scope of reasonable performance provided by a competent attorney handling a criminal case. *Strickland*, at 687-88.

As discussed above, the plea agreement did not include any provision which addressed parole eligibility; the trial court did not reject any agreed upon parole

terms; and the trial court did not reject any provision of the plea agreement. The trial court adopted the parties' plea recommendation, but imposed a parole restriction as a condition of Miller's sentence, pursuant to the court's statutory authority. As the state court observed, because the trial court adopted and followed the parties' agreement of two concurrent life sentences, there was nothing to which counsel could have objected.

Further, contrary to Miller's claim of ineffective assistance, it appears that Miller benefitted substantially from Goetz's representation. Miller was facing the death penalty, and Goetz successfully negotiated a plea agreement which relieved Miller of the prospect of being put to death. Goetz argued persuasively on Miller's behalf during the sentencing hearing, and successfully convinced the trial court to give Miller the hope of eventual release on parole. Indeed, counsel was successful in persuading the trial court not to accept the recommendation in presentence investigation, which recommended that run Miller's sentences consecutively, and that he not be parole eligible for a minimum of forty years. (Doc. 9 at 9).

Thus, counsel's performance – in helping Miller avoid the death penalty and securing the possibility of parole at a future date – was reasonable and effective. Accordingly, this Court need not consider whether Miller suffered prejudice. *Strickland*, at 697. Under §2254's deferential standard, Miller has not met his burden. Accordingly, the state court's determination was not contrary to or an

unreasonable application of established federal law.  This Court should afford that decision deference.

### 3.  Claim 3- Due Process Violation

As to his due process claim, the state court found that the trial court's failure to strictly follow the state's plea procedure statute did not violate Miller's substantive due process rights.  Miller contends this finding to be contrary to clearly established federal law and is unreasonable in light of the facts of the case.

The statute in place at the time of Miller's change of plea hearing provided that "[b]efore a judge accepts a plea of guilty, he must advise the defendant: (1) of all of the provisions of subsection (3)(a)."  Subsection (3)(a) read:

> A plea bargain agreement is an agreement between a defendant and a prosecutor that in exchange for a particular plea the prosecutor will recommend to the court a particular sentence.  A judge may not participate in the making of, and is not bound by, a plea agreement.  If a judge does not impose a sentence recommended by a prosecutor pursuant to a plea agreement, the judge is not required to allow the defendant to withdraw a plea of guilty.

MCA § 46-12-204(3)(a)(b)(i).

Miller alleges that the trial court's failure to fully inform him of the provisions of subsection (3)(a) at his change of plea hearing violated a liberty interest protected by due process.

In denying Miller's motion to withdraw, the state court applied the Ninth Circuit's decision in *Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995) to determine

25

whether Miller suffered a deprivation of a constitutionally protected interest. The court noted that "in order to create a liberty interest protected by due process, the state law must contain: (1) substantive predicates governing official decision making, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met." (Doc. 8-58 at 9)(citing *Bonin*, 59 F. 3d at 842). The state court went on to observe that "in order to contain the requisite substantive predicates, the state law at issue must provide more than merely procedure; it must protect some substantive end." *Id*. The court observed that the statute at issue in *Bonin*, much like the state statute here, merely created a procedural right which was designed to facilitate the protection of more fundamental substantive rights. The state court thus found that failing to inform Miller of certain procedural rights – (1) that the trial court could not participate in the formulation of a plea agreement and (2) that Miller would not be able to withdraw his plea agreement if the court rejected it – did not deprive Miller of any constitutionally protected rights. *Id*. at 9-10.

The state court went on to find that the trial court did inform Miller of all of the constitutional rights he would be waiving by virtue of his guilty plea. *Id*. at 10. Additionally, the trial court informed Miller that it was not bound by the plea agreement. *Id*. Therefore, while the court may have failed to inform Miller of two of his procedural rights, it did inform him of all of his substantive rights.

Accordingly, Miller could not establish the first prong of the due process analysis. *Id.*

The state court further observed that even if Mont. Code Ann. § 46-12-204 protected some substantive end, it did not mandate a particular outcome. The court found that Miller may be correct that the statute directs the trial court to take certain actions, but it does not mandate a particular outcome if the substantive predicates are met. Accordingly, the second prong of the due process analysis was also not met. Thus, the state court determined Miller was not deprived of his right to due process under the United States or Montana constitutions. *Id.* at 10.

In the instant action, Miller argues that the use of the word "must" in subsection (b)(i) of MCA § 46-12-204 creates a presumption that the judge could not accept Miller's plea without first determining that Miller was fully aware of Subsection 3(a). (Doc. 2 at 14). Miller contends this statute provides him with a substantive right to be fully informed prior to an entry of plea, and because he was not, his plea was not entered knowingly and intelligently in violation of his right to due process. *Id.*

Miller simply recasts the same arguments he made to the state courts, and the Court finds that the state courts' rejection of this claim was not objectively reasonable. This Court agrees with the state court's determination that the state statute at issue did not create a protected liberty interest, but rather created a

27

procedural requirement.  The statute did not contain "substantive predicates" protecting a substantive end; rather, it imposed procedural requirements in the plea process intended to safeguard substantive rights, including the right to enter a knowing a voluntary plea.  *See Loftis v. Almager,* 704 F. 3d 645, 648 (9th Cir. 2012).  Because the state court's decision was not objectively unreasonable in denying this claim, it should be afforded deference.

Additionally, because the Montana statute in effect at the time of Miller's change of plea did not create a constitutionally protected liberty interest, Miller's claim is based on an alleged error of state-law which is not cognizable in federal habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Langford v. Day*, 110 F. 3d 1380, 1389 (9th Cir. 1996).  Under either analysis, Miller is not entitled to relief.

### ii.    Conclusion

Mr. Miller's petition should be denied; his claims do not survive deferential review under the AEDPA.

### IV.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254 Proceedings.  A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C.

2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of the constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El Cockrell*, 537 U.S. 322, 327 (2003)(citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Mr. Miller has not met the standard. He has not made the substantial showing of a denial of a constitutional right and because reasonable jurists would not disagree with this finding, there is no reason to encourage further proceedings. A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. The Petition (Doc. 1) should be DENIED on the merits; it does not survive deferential review.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Miller may object to this Findings and Recommendation within 14

days.[6] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

   Miller must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this case without notice to him.

   DATED this 2nd day of May, 2018.

/s/ Timothy J. Cavan
Timothy J. Cavan
United States Magistrate Judge

---

[6] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Miller is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.